ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| JONATHAN LÓPEZ ROMÁN<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202300221 | Revisión Judicial procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>12-12781<br><br>Sobre:<br>Reclasificación de Custodia |
|---|---|---|

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Grana Martínez y el Juez Rodríguez Flores

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2023.

Comparece el señor Jonathan López Román, en adelante señor López o el recurrente, y nos solicita que revisemos el *Acuerdo del Comité de Clasificación y Tratamiento*, emitido por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación, en adelante Corrección o el recurrido, en virtud del cual ratificó el nivel de custodia mediana del recurrente.

Por los fundamentos que expondremos a continuación, se confirma la determinación recurrida.

-I-

Surge de la copia certificada del expediente administrativo, que Corrección ratificó la custodia mediana del recurrente. Específicamente determinó:

…La escala de Reclasificación de custodia otorga una puntuación de Mínima seguridad. Se utiliza una modificación discrecional para un nivel de custodia más alto, la puntuación subestima la gravedad del delito, además durante este periodo

evaluado incurrió en nuevo delito por el cual fue sentenciado a 7 meses con 15 días adicionales al total de su sentencia. La conducta anteriormente presentada muestra el no estar preparado aun para disfrutar de un nivel de custodia con menores restricciones por lo cual se recomienda ratificar su nivel de custodia: Mediana y observar sus ajustes generales por un periodo de tiempo adicional el cual demuestre interés genuino en su proceso de rehabilitación para cuando reingrese a la libre comunidad.

En desacuerdo, el señor López presentó una reconsideración. Adujo que el recurrido abusó de su discreción al considerar como único factor para denegar la reclasificación a custodia mínima la gravedad de las sentencias impuestas y un delito por el cual se le sentenció recientemente a 7 meses y 15 días de cárcel. En cuanto a este último, alegó que "el asunto administrativo fue resuelto" y no se le impusieron sanciones disciplinarias.

Por su parte, el recurrido declaró no ha lugar la reconsideración. Sostuvo que el señor López cumple sentencias por 45 años en prisión por delitos violentos y tan reciente como el 31 de enero de 2023 se le sentenció por un delito cometido en prisión. Por ello, se le aplicó la "Modificación Discrecional" "Desobediencia ante las Normas", lo que procede imponer un nivel de custodia más alto.

Aun insatisfecho, el recurrente presentó un recurso de *Revisión Judicial* en el que alega la comisión de los siguientes errores:

> Erró el Departamento de Corrección y Rehabilitación a través del Comité de Clasificación y Tratamiento al ratificar el Nivel de Custodia Mediana, alegando como único criterio para sostener su determinación la aplicación de una Modificación Discrecional sin tomar en consideración la desestimación de la querella administrativa por los mismos hechos por lo cual fue sentenciado el día 31 de enero de 2023 y a lo cual le dan mayor peso.

Erró el Departamento de Corrección y Rehabilitación a través del Comité de Clasificación y Tratamiento, ya que la evidencia sobre la que fundamentó su determinación de hechos no es sustancial, por lo que su determinación fue irrazonable, en comparación con la totalidad de la prueba que obra en el expediente administrativo en contravención a los criterios para determinar el nivel de custodia.

Erró el Departamento de Corrección y Rehabilitación y el C.C. y T., ya que su decisión incidió en realizar un balance de intereses entre el Mandato Constitucional al tratamiento adecuado de los confinados que haga posible su rehabilitación y la seguridad de la población y el personal correccional, obviando así su propia evaluación y análisis de los buenos ajustes institucionales del recurrente y el cumplimiento de su plan institucional, violentando así los preceptos básicos contenidos en la Sección 19 del Artículo V de la Constitución del Estado Libre Asociado de Puerto Rico, dirigidos a la rehabilitación del confinado y, a su vez, contenidos en la propia misión y propósito de ser del Departamento, por tanto, el criterio utilizado para negar la modificación de custodia es uno arbitrario, que está en contravención con el espíritu y objetivo de la ley que autoriza el Manual para Clasificación del Confinado, Núm. 9033 del 18 de junio de 2018, que le aplicaron.

Erró el Departamento de Corrección y Rehabilitación y el C. C. y T. al aplicarle al recurrente la reglamentación que utilizó, debido a que fue aprobada luego de la comisión de los delitos por los cuales se encuentra recluido.

Revisados la copia certificada del expediente administrativo, los escritos de las partes y los documentos que obran en autos, estamos en posición de resolver.

**-II-**

**A.**

La revisión judicial de las decisiones administrativas tiene como fin primordial delimitar la discreción de las agencias, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable.[1] A esos efectos, la revisión judicial comprende tres aspectos, a saber: 1) la concesión del remedio

---

[1] *Fuentes Bonilla v. ELA,* 200 DPR 364 (2018); *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011); *Empresas Ferrer v. ARPe*, 172 DPR 254, 264 (2007).

apropiado; 2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y 3) la revisión completa y absoluta de las conclusiones de derecho del organismo administrativo.[2] Además, el tribunal debe determinar si la agencia, en el caso particular, actuó arbitraria o ilegalmente, o de manera tan irrazonable que su actuación constituyó un abuso de discreción.[3]

El Tribunal Supremo de Puerto Rico, en adelante TSPR, ha establecido que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo considerado en su totalidad.[4] Evidencia sustancial es aquella evidencia pertinente que "una mente razonable pueda aceptar como adecuada para sostener una conclusión".[5] Este estándar de revisión requiere que la evidencia sea considerada en su totalidad, esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[6] Ello implica que de existir un conflicto razonable en la prueba, debe respetarse la apreciación realizada por la agencia.[7] Esta revisión contra el expediente se basa exclusivamente en evidencia y materias oficialmente

---

[2] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012); *Padín Medina v. Adm. Sist. Retiro*, 171 DPR 950, 960 (2007).
[3] *Batista, Nobbe v. Jta. Directores, supra,* pág. 216; *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009); *Rivera Concepción v. ARPe*, 152 DPR 116, 122 (2000).
[4] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1027 (2020); *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000); Véase, Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante LPAU, Ley Núm. 30-2017 (3 LPRA sec. 9675).
[5] *Asoc. Vec. H. San Jorge v. U. Med. Corp., supra.*
[6] *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 512 (2011), *Assoc. Ins. Agencies, Inc. v. Com. Seg. PR*, 144 DPR 425, 437 (1997).
[7] *Otero v. Toyota,* 163 DPR 716, (2005); *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).

admitidas, en los asuntos sobre los que se tomó conocimiento oficial y en todo lo que surgió en la vista administrativa.[8]

En cuanto a las conclusiones de derecho, estas pueden ser revisadas en todos sus aspectos.[9] Sin embargo, esto no implica que los tribunales gocen de libertad absoluta para descartarlas.[10] Por el contrario, al revisar las conclusiones de derecho de una agencia administrativa, los tribunales tienen que examinar la totalidad del expediente y determinar si la interpretación es un ejercicio razonable de la discreción administrativa basado en la pericia particular, en consideraciones de política pública o en la apreciación de la prueba.[11] Rebasado dicho umbral, solo procede sustituir el criterio de la agencia por el del tribunal revisor cuando no exista una base racional para explicar la decisión administrativa.[12]

En síntesis,

> Al revisar las interpretaciones y conclusiones administrativas, el tribunal debe hacer una evaluación independiente sobre la aplicación del derecho a los hechos que la agencia estimó pertinentes. Confrontado con un resultado distinto del obtenido por la agencia, el tribunal debe determinar si la divergencia responde un ejercicio razonable de la discreción administrativa fundamentado, por ejemplo, en una pericia particular, consideraciones de política pública, o la apreciación de la prueba que tuvo ante su consideración. El tribunal podrá sustituir el criterio de la agencia por el propio sólo cuando no pueda hallar una base racional para explicar la decisión administrativa.[13]

---

[8] *Com. de Seguros v. AEELA*, 171 DPR 514, 525 (2007).
[9] *Capó Cruz v. Junta de Planificación,* 204 DPR 581, 591 (2020); *Otero v. Toyota*, *supra*, pág. 729. Véase, además*, Super Asphalt v. Autoridad para el Financiamiento,* 206 DPR 803, 820 (2021).
[10] *Id.*
[11] *Otero v. Toyota*, *supra*, pág. 729; *Misión Ind. PR v. JP.*, 146 DPR 64, 134-135 (1998).
[12] *Capó Cruz v. Junta de Planificación, supra,* pág. 591.
[13] *Misión Ind. PR v. JP*, *supra.*

**B.**

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico y el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, en adelante Ley Núm. 2-2011, establecen que será la política pública del Estado Libre Asociado que las instituciones penales propendan al tratamiento adecuado de las personas delincuentes para hacer posible su rehabilitación moral y social, siguiendo el principio de tratamiento individualizado.[14]

Con este objetivo en mente, el Departamento de Corrección aprobó el *Manual de Clasificación de Confinados*, Reglamento Núm. 9151 de 22 de enero de 2020 [Enmendado], en adelante el Manual. Conforme a este, el Comité de Clasificación y Tratamiento es el ente responsable de evaluar y cumplir las funciones relacionadas con la clasificación de custodia de los reclusos. Para realizar sus funciones, el Comité goza de una amplia, aunque no absoluta, discreción.[15]

Con el propósito de realizar dicha encomienda, el Manual adoptó un procedimiento de reclasificación para revisar el nivel de custodia de cada confinado, de modo que se pueda establecer para cada caso lo apropiado a su asignación de custodia.[16] Ahora bien, conviene destacar que, para reclasificar la custodia de un confinado, es importante considerar su conducta institucional como reflejo real de su comportamiento durante su reclusión.[17]

---

[14] Art. 2 de la Ley Núm. 2-2011 (3 LPRA Ap. XVIII).
[15] *López Borges v. Adm. Corrección*, 185 DPR 603, 608-611 (2012); *Cruz v. Administración*, 164 DPR 341, 352 (2005).
[16] Art. IV (7) del Manual de Clasificación de Confinados, Reglamento Núm. 9151 de 22 de enero de 2020, págs. 48-52.
[17] *Id.*, sec. 7 (II), pág. 48.

En lo que respecta a la clasificación de custodia, en *Cruz v. Administración*, el TSPR, sostuvo:

> La determinación administrativa relativa al nivel de custodia asignado a un confinado requiere que se realice un balance de intereses adecuado. Por una parte, estará el interés público de lograr la rehabilitación del confinado, así como mantener la seguridad institucional y general del resto de la población penal; de la otra, estará el interés particular del confinado de permanecer en un determinado nivel de custodia. Además, al momento de determinarse la procedencia de un cambio en el nivel de custodia, deberá considerarse una serie de factores subjetivos y objetivos, para cuya atención se requiere la pericia de la Administración de Corrección.[18]

Por otro lado, para determinar la clasificación de custodia se adopta una escala de reclasificación basada en criterios objetivos a los cuales se les asigna una ponderación numérica fija. Los factores pertinentes son: 1) la gravedad de los cargos y sentencias actuales; 2) el historial de delitos graves anteriores; 3) el historial de fuga; 4) el historial de acciones disciplinarias; 5) la acción disciplinaria más seria desde la última clasificación; 6) las sentencias previas de delitos graves como adulto; 7) la participación en programas administrados por el Departamento de Corrección; y 8) la edad del confinado.[19] Si la suma de los 3 primeros factores es mayor de 7, deberá asignarse al confinado a un nivel de custodia máxima. En caso contrario, se consideran los factores remanentes. Si la suma de éstos es menor de 5 y no hay órdenes de arresto o detención contra el confinado, se recomienda un nivel de custodia mínima.[20]

Sin embargo, existen modificaciones discrecionales que puede utilizar el Comité para aumentar o disminuir

---

[18] *Cruz v. Administración*, *supra*, pág. 352.
[19] Apéndice K (II) del Manual de Clasificación de Confinados, *supra*. (Énfasis suplido).
[20] *Id.*, sec. III(A).

un nivel de custodia. Estas determinaciones deben estar basadas, entre otras, en documentación escrita, proveniente de reportes disciplinarios y **documentos del expediente criminal** o social. Específicamente, entre los criterios a ser considerados se encuentran la gravedad del delito, el historial de violencia excesiva, la afiliación prominente con gangas, el difícil manejo, niveles de reincidencia, riesgo de fuga, comportamiento sexual agresivo, trastornos mentales o desajustes emocionales, peligro o amenaza, la tendencia a desobedecer las normas institucionales y **la comisión de delitos en prisión**.[21] Es en este ámbito discrecional que interviene el *expertise* y la discreción del Comité, para emitir recomendaciones conforme las necesidades del confinado.

### -III-

En esencia, el señor López alega que erró el Comité al ratificar su clasificación de custodia mediana. Entiende que, el criterio utilizado para negar la modificación de su custodia es uno arbitrario y que está en contravención con el espíritu y el objetivo de la Ley Núm. 2-2011 y del Art. VI, Sec. 19, de la Constitución del Estado Libre Asociado de Puerto Rico [Constitución de Puerto Rico], LPRA, Tomo 1.[22]

Sostiene, además, que erró Corrección al aplicar el criterio discrecional de desobediencia a las normas institucionales, en ausencia de un procedimiento disciplinario en el que se haya determinado que infringió alguna norma institucional. Por otro lado,

---

[21] *Id.*, sec. III(D). (Énfasis suplido).
[22] Art. VI, Sec. 19, Const. ELA [Const. PR], LPRA, Tomo 1, ed. 2016, pág. 455.

cuestiona el parámetro que utilizó el recurrido al aplicar un reglamento más restrictivo que el Reglamento Número 8281 de noviembre de 2012, menos oneroso para el confinado y más próximo a las sentencias que motivaron su confinamiento.

Finalmente aduce, que la evidencia utilizada por el Comité no es sustancial. Específicamente, del expediente y la evaluación no surge historial alguno de violencia excesiva. Por el contrario, alega que su participación en los programas de rehabilitación y la puntuación otorgada en diversos renglones en la escala de reclasificación le hacen candidato a un nivel de custodia más bajo.

En cambio, Corrección alega que procede confirmar la resolución recurrida. Esto es así, porque la modificación discrecional de desobediencia a las normas está basada en la comisión de un delito de posesión de celular que obra en el expediente. Además, no erró el recurrido al aplicar el Reglamento Núm. 9151, ya que este estaba vigente al momento de la comisión del delito previamente mencionado.

La determinación recurrida está basada en prueba que obra en el expediente administrativo, por lo cual corresponde confirmarla. Veamos.

Surge del expediente que el recurrente resultó convicto de delitos de asesinato en segundo grado y por violación a los Artículos 5.04 y 5.15 de la Ley de Armas, que representan una sentencia total de 45 años. Dada la naturaleza violenta de los delitos por los que el señor López resultó convicto, Corrección podía aplicar el criterio discrecional de gravedad del delito

y mantener el nivel de custodia más restrictivo. Así pues, no abusó de su discreción al emitir esta determinación.

Del mismo modo, obra en el expediente administrativo una sentencia dictada el 31 de enero de 2023 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, en el caso CRIM. Núm. A LE2022G0146, mediante la cual el recurrente hizo alegación de culpabilidad por infracción al Artículo 2 de la Ley 15 de 18 de febrero de 2023, Ley para Establecer Restricciones al Uso de Teléfonos Celulares a Personas Confinadas en las Instituciones Penales de Puerto Rico, Ley Núm. 15-2011, 4 LPRA sec. 1631 *et seq*. Este delito, cometido mientras el recurrente estaba confinado, podía servir de fundamento al recurrido, para, que en el ejercicio de su discreción, Corrección impusiera la modificación discrecional de desobediencia a las normas y con ello mantener al señor López en el nivel de custodia mediana. De modo, que el recurrido no abusó de su discreción al así proceder.

Ahora bien, el hecho de que al recurrente no se le sometió a un trámite administrativo por la infracción al Artículo 2 de la Ley Núm. 15, *supra,* es inconsecuente para la imposición de la modificación discrecional de desobediencia a las normas. Ello obedece a que la sentencia obra en el expediente penal y ello es suficiente bajo el Reglamento Núm. 9151[23] para aplicar la disposición e imponer el nivel de custodia más estricto.

---

[23] Reglamento Núm. 5191, sec. III (D).

Tampoco tiene mayor impacto la alegación de arbitrariedad de Corrección al aplicar el Reglamento Núm. 9151, *supra*. Esto es así porque este entró en vigor en el 2020, mientras que los hechos que generaron la imposición de la sentencia por violación al Artículo 2 de la Ley Núm. 15-2011, ocurrieron en marzo de 2022. Es decir, en plena vigencia del Reglamento 9151, *supra*.

Por otro lado, el recurrente no ha presentado otra prueba, que obre en el expediente, que menoscabe el valor probatorio de aquella en que se basó Corrección.

En fin, no se derrotó la presunción de corrección de la resolución impugnada.

**-IV-**

Por los fundamentos antes expuestos, se confirma la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


                          Lcda. Lilia M. Oquendo Solís
                        Secretaria del Tribunal de Apelaciones